

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-13-00061-CV

IN THE INTEREST OF M.C.D AND
J.N.D., CHILDREN

----------

### FROM THE 323RD DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

Appellants C.C.C. (Mother) and M.D. (Father) appeal the trial court's judgment terminating their parental rights to their children, M.C.D. and J.N.D. We will affirm.

### II. BACKGROUND

Mother and Father's relationship began in November 2008. They moved in together a few months later. M.C.D. was born in October 2009. J.N.D. was born in September 2010.

---

[1]See Tex. R. App. P. 47.4.

In late April 2012, CPS received a referral involving neglectful supervision of the children after Mother "abandoned" them at an apartment from which she had recently been evicted. CPS collected the children from the police department but could not locate Mother. Mother contacted the police later in the afternoon. She told CPS that she had left the children with a neighbor the previous night so that she could "handle some business." CPS had removed the neighbor's children the previous week. Mother knew this. CPS had received several other referrals involving M.C.D. and J.N.D.—Mother and Father were uncooperative and hostile—so it decided to bring the children under its care. Appellee Department of Family and Protective Services (DFPS) consequently filed a petition for protection of the children, for conservatorship, and for termination in suit affecting the parent-child relationship.

CPS set up service plans for Mother and Father. Mother did not complete her plan, nor did Father, but he had been incarcerated since January 2012 awaiting trial on a charge of indecency with a child. In June 2012, Father pleaded guilty and was convicted of injury to a child. He was sentenced to two years' confinement. Father is scheduled to be released from prison in September 2013.

The termination bench trial took place in February 2013. Mother did not show up, but her attorney did. Father appeared for trial and testified. The trial court ultimately signed an order terminating Mother's and Father's parental rights to the children. It found by clear and convincing evidence that termination of

2

mother's parental rights was appropriate under family code subsections 161.001(1)(D), (E), (N), and (O) and that termination is in the children's best interest. *See* Tex. Fam. Code Ann. §§ 161.001(1)(D), (E), (N), (O), (2) (West Supp. 2012). As to Father, the trial court found by clear and convincing evidence that termination of his parental rights was appropriate under family code section 161.002(b)(1) and family code subsections 161.001(1)(D), (E), (L), and (O) and that termination is in the children's best interest. *See id.* §§ 161.001(1)(D), (E), (L), (O), (2), § 161.002(b)(1) (West 2008).

### III. BURDEN OF PROOF AND STANDARDS OF REVIEW

Termination decisions must be supported by clear and convincing evidence. Tex. Fam. Code Ann. § 161.001, § 161.206(a) (West 2008). Evidence is clear and convincing if it "will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007 (West 2008).

In evaluating the evidence for legal sufficiency in parental termination cases, we determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction that the challenged ground for termination was proven. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). We review all the evidence in the light most favorable to the finding and judgment. *Id.* We consider evidence favorable to termination if a reasonable factfinder could, and we disregard contrary evidence unless a reasonable factfinder could not. *Id.*

3

In reviewing the evidence for factual sufficiency, we give due deference to the factfinder's findings and do not supplant the judgment with our own. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). We determine whether, on the entire record, a factfinder could reasonably form a firm conviction or belief that the parent violated section 161.001(1) and that termination of the parent-child relationship would be in the best interest of the child. Tex. Fam. Code Ann. § 161.001; *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002). If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction in the truth of its finding, then the evidence is factually insufficient. *H.R.M.*, 209 S.W.3d at 108.

## IV. MOTHER'S APPEAL

### A. Endangerment Findings

In her first and second issues, Mother argues that the evidence is legally and factually insufficient to support the trial court's subsections 161.001(1)(D) and (E) endangerment findings.

Endangerment means to expose to loss or injury, to jeopardize. *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.). The trial court may order termination of the parent-child relationship if it finds by clear and convincing evidence that the parent has knowingly placed or knowingly allowed the child to remain in conditions or surroundings that endanger the physical or emotional well-being of the child. Tex. Fam. Code Ann. § 161.001(1)(D). Under

4

subsection (D), it is necessary to examine evidence related to the environment of the child to determine if the environment was the source of endangerment to the child's physical or emotional well-being. *In re D.T.*, 34 S.W.3d 625, 632 (Tex. App.—Fort Worth 2000, pet. denied). A child is endangered when the environment creates a potential for danger that the parent is aware of but disregards. *In re M.R.J.M.*, 280 S.W.3d 494, 502 (Tex. App.—Fort Worth 2009, no pet.). Inappropriate, abusive, or unlawful conduct by persons who live in the child's home or with whom the child is compelled to associate on a regular basis in his home is a part of the "conditions or surroundings" of the child's home under section 161.001(1)(D). *Id.* Conduct of a parent in the home can create an environment that endangers the physical and emotional well-being of a child. *J.T.G.*, 121 S.W.3d at 125.

The trial court may order termination of the parent-child relationship if it finds by clear and convincing evidence that the parent has engaged in conduct or knowingly placed the child with persons who engaged in conduct that endangers the physical or emotional well-being of the child. Tex. Fam. Code Ann. § 161.001(1)(E). Under subsection (E), the relevant inquiry is whether evidence exists that the endangerment of the child's physical or emotional well-being was the direct result of the parent's conduct, including acts, omissions, and failures to act. *J.T.G.*, 121 S.W.3d at 125. Termination under subsection (E) must be based on more than a single act or omission; a voluntary, deliberate, and

5

conscious course of conduct by the parent is required. *Id.*; *D.T.*, 34 S.W.3d at 634.

As a general rule, conduct that subjects a child to a life of uncertainty and instability endangers the child's physical and emotional well-being. *In re S.D.*, 980 S.W.2d 758, 763 (Tex. App.—San Antonio 1998, pet. denied). To support a finding of endangerment, the parent's conduct does not necessarily have to be directed at the child, and the child is not required to suffer injury. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987). The specific danger to the child's well-being may be inferred from parental misconduct alone, and to determine whether termination is necessary, courts may look to parental conduct both before and after the child's birth. *Id.*; *In re D.M.*, 58 S.W.3d 801, 812–13 (Tex. App.—Fort Worth 2001, no pet.). A factfinder may also infer from past conduct endangering the well-being of the child that similar conduct will recur if the child is returned to the parent. *In re M.M.*, No. 02-08-00029-CV, 2008 WL 5195353, at *6 (Tex. App.—Fort Worth Dec. 11, 2008, no pet.) (mem. op.). In conducting an evidentiary sufficiency review of a factfinder's subsections 161.001(1)(D) and (E) findings, this court has previously considered, among other things, evidence that the children were exposed to domestic violence and evidence that the parent did not complete a service plan. *In re M.R.*, 243 S.W.3d 807, 818 (Tex. App.—Fort Worth 2007, no pet.).

Because the evidence pertaining to subsections 161.001(1)(D) and (E) is interrelated, we conduct a consolidated review. *In re T.N.S.*, 230 S.W.3d 434, 439 (Tex. App.—San Antonio 2007, no pet.); *J.T.G.*, 121 S.W.3d at 126.

Brittny Braswell, the CPS investigator assigned to the children's case, testified that Mother had three arrests, including one in which she was arrested in January 2012 for prostitution. Father confirmed this; he told Braswell during an interview that he had been arrested in Louisiana for promoting prostitution and that Mother had been arrested for prostitution.

Haylee Long, the conservatorship worker assigned to the children's case, testified that mother said she smoked marijuana. On two occasions during the case, Long asked Mother to submit to a random drug test but Mother refused because "she knew she would test positive for marijuana." DFPS had concerns about Mother's drug use.

Braswell explained that CPS had received several other referrals involving the children. One of them, in February 2010, involved a situation in which the police responded to gunshots at a home. Father and several other people had barricaded themselves in the home. According to Braswell, Mother refused to come out with M.C.D.

The other referral was from November 2009 and involved an allegation that Father hit Mother in the face, threw her to the ground, and choked her in front of M.C.D., who was four weeks old at the time. Mother sustained bruises and cuts. Mother told Long that domestic violence occurred frequently in her

7

relationship with Father, but Mother nonetheless remained "very protective" of Father.

Braswell testified that the children were removed from Mother after she "abandoned" them at an apartment. Mother said that she left the children with a neighbor, but CPS had recently removed the neighbor's children, and Mother knew that. Mother contacted the police later in the day inquiring about the children. Braswell had reason to believe that Mother did not leave the children with a responsible adult.

Mother did not complete her service plan. Long testified that Mother failed to complete a domestic violence course, a mental health screening, individual counseling, parenting classes, substance abuse training, and random drug testing. Mother attended only three visits with the children; the last one was in May 2012, approximately nine months before the termination trial. Mother also never informed Long that she obtained employment.

Long asked the trial court to terminate Mother's and Father's parental rights because they had not shown that they could protect the children.

Accordingly, giving due deference to the trial court's findings, we hold that the trial court could have formed a firm belief or conviction that Mother engaged in conduct and knowingly placed or knowingly allowed the children to remain in conditions that endangered their physical or emotional well-being. *See* Tex. Fam. Code. Ann. § 161.001(1)(D), (E). We therefore hold that the evidence is legally and factually sufficient to support the trial court's subsections

8

161.001(1)(D) and (E) findings.  We overrule Mother's first and second issues. Having overruled those issues, we need not address—and therefore overrule— her third and fourth issues challenging the legal and factual sufficiency of the evidence to support the trial court's subsections 161.001(1)(N) and (O) findings. *See* Tex. R. App. P. 47.1; *J.L.*, 163 S.W.3d at 84 (stating that parent must have committed only one of the acts prohibited under family code section 161.001(1) for termination of her parental rights).

## B.    Best Interest Finding

Mother argues in her fifth issue that the evidence is legally and factually insufficient to support the trial court's best interest finding.

There is a strong presumption that keeping a child with a parent is in the child's best interest.  *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006).  Prompt and permanent placement of the child in a safe environment is also presumed to be in the child's best interest.  Tex. Fam. Code Ann. § 263.307(a) (West 2008) (listing factors that should be considered in evaluating the parent's willingness and ability to provide the child with a safe environment).  Nonexclusive factors that the trier of fact in a termination case may use in determining the best interest of the child include: (A) the desires of the child; (B) the emotional and physical needs of the child now and in the future; (C) the emotional and physical danger to the child now and in the future; (D) the parental abilities of the individuals seeking custody; (E) the programs available to assist these individuals to promote the best interest of the child; (F) the plans for the child by these

9

individuals or by the agency seeking custody; (G) the stability of the home or proposed placement; (H) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (I) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These factors are not exhaustive; some listed factors may be inapplicable to some cases, and other factors not on the list may also be considered when appropriate. *C.H.*, 89 S.W.3d at 27. The same evidence of acts or omissions used to establish grounds for termination under section 161.001(1) may be probative in determining the best interest of the child. *Id.* at 28.

The evidence detailed above regarding Mother's involvement with prostitution, drugs, and domestic violence and her failure to complete her service plan is probative to the best interest inquiry. *See id.* Mother also failed to inform Long during the case that she had obtained stable housing and a job. Long last heard that Mother was living with a friend.

C.M., the children's great aunt, testified that she has had possession of the children for eight months, that their behavior had improved dramatically over that period of time, and that she and her husband plan to adopt the children if Mother's and Father's parental rights are terminated.

Father claimed at one point during his testimony that Mother did not have a history of prostitution, and Father's mother testified that she thought Mother

cared about her children and loved them and that her parental rights should not be terminated.

Considering the relevant statutory factors in evaluating Mother's willingness and ability to provide the children with a safe environment and the relevant *Holley* factors, we hold that, in light of the entire record, and giving due consideration to evidence that the trial court could have reasonably found to be clear and convincing, the trial court could reasonably have formed a firm belief or conviction that termination of Mother's parental rights to the children is in the children's best interests. Accordingly, the evidence is legally and factually sufficient to support the trial court's section 161.001(2) best interest finding. We overrule Mother's fifth issue.

## V. FATHER'S APPEAL

In four issues, Father challenges the legal and factual sufficiency of the evidence to support the trial court's subsections 161.001(1)(D), (E), and (O) findings and the best interest finding. He does not, however, challenge the trial court's subsection (L) finding. When a parent does not challenge an independent ground that may support the judgment that he seeks to reverse, this court may not address either the challenged grounds or the unchallenged ground and has no choice but to overrule the challenges that the parent has chosen to assert. *See In re A.V.*, 113 S.W.3d 355, 361–62 (Tex. 2003); *Hong Kong Dev., Inc. v. Nguyen*, 229 S.W.3d 415, 456 (Tex. App.—Houston [1st Dist.] 2007, no pet.). Accordingly, because Father does not challenge a ground upon which the trial

11

court based its termination decision, we need not address Father's first, second, and third issues challenging the trial court's alternative subsection 161.001(1) findings, and we overrule those issues.[2]

We have already set out the factors and standards relevant to a review of the trial court's best interest finding. *See Holley*, 544 S.W.2d at 371–72; *see also C.H.*, 89 S.W.3d at 27–28. The evidence demonstrates that in addition to injury to a child, father has convictions for criminal mischief $500–$1,500, unauthorized use of a motor vehicle, violation of a protective order, and robbery.[3] Father also has arrests for promotion of prostitution and indecency with a child, and he has been involved in acts of domestic violence with Mother. Father was incarcerated at the time of trial and unable to provide the children with a stable home. *See M.R.*, 243 S.W.3d at 821 (reasoning that incarceration is one factor courts can consider when determining the best interest of a child in a termination case).

Contrary to this evidence, Father testified that he did not commit the offense for which he was incarcerated, that he had no part in Mother engaging in prostitution, and that he has never committed domestic violence. Father explained that he loves his children and that his parental rights should not be terminated.

---

[2]We also need not address the parties' arguments regarding the trial court's section 161.002(b)(1) finding.

[3]In the context of his injury-to-a-child conviction, Father was allowed to plea in bar to two evading arrests.

As set out above, the children are thriving with a family that intends to adopt them.

Considering the relevant statutory factors in evaluating Father's willingness and ability to provide the children with a safe environment and the relevant *Holley* factors, we hold that, in light of the entire record, and giving due consideration to evidence that the trial court could have reasonably found to be clear and convincing, the trial court could reasonably have formed a firm belief or conviction that termination of Father's parental rights to the children is in the children's best interests. Accordingly, the evidence is legally and factually sufficient to support the trial court's section 161.001(2) best interest finding. We overrule Father's fourth issue.

## VI. CONCLUSION

Having overruled Mother's dispositive issues and Father's dispositive issues, we affirm the trial court's order terminating the parent-child relationship between Mother and the children and Father and the children.

PER CURIAM

PANEL:  MEIER, J.; LIVINGSTON, C.J.; and DAUPHINOT, J.

DELIVERED:  July 18, 2013